UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| WILSON JAMES, | ) | Case No. 5:07CV2646 |
| | ) | |
| Petitioner, | ) | JUDGE DONALD NUGENT |
| | ) | |
| v. | ) | |
| | ) | |
| STUART HUDSON, Warden, | ) | Magistrate Judge George J. Limbert |
| | ) | |
| Respondent. | ) | REPORT AND RECOMMENDATION |
| | ) | OF MAGISTRATE JUDGE |
| | ) | |

On August 31, 2007, Wilson James, ("Petitioner"), through counsel, filed a writ of

habeas corpus in this Court pursuant to 28 U.S.C. § 2254.  ECF Dkt. #1.  Petitioner seeks relief

from a judgment of conviction entered by the Stark County, Ohio Court of Common Pleas for

the offense of murder with a firearm specification.  *Id.*  On February 11, 2008, Warden Stuart

Hudson ("Respondent") filed a return of writ.  ECF Dkt. #12.  Petitioner, through counsel, filed a

traverse.  The case was referred to the undersigned to issue a report and recommendation.  ECF

Dkt. #7.  For the following reasons, the undersigned recommends that the Court DISMISS the

instant petition with prejudice.

## I.    FACTUAL BACKGROUND

Normally, a state court's factual findings are binding and "shall be presumed to be

correct," placing the burden on Petitioner to "rebut[ ]the presumption of correctness by clear and

convincing evidence."  28 U.S.C. §2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir.

1998), *cert. denie*d, 119 S.Ct. 2403 (1999).  The Fifth District Court of Appeals of Stark County,

Ohio set forth the following facts of this case:

> On September 27, 2004, Adam Smith was at a home located at 1455 Ohio Ave., N.E.,
> Canton, Stark County, Ohio with Matthew Bacorn, Zachary Bacorn, Christian James,
> Darius James and several other individuals.  Christian and Darius James are
> appellant's sons.  Sometime that evening, Smith and Christian got into a verbal
> disagreement wherein Christian threatened to stab Smith and Smith countered by
> threatening to choke Christian.  (2T. at 174-75); 206).  At no time did the argument
> become physical.  During the argument, Christian called appellant and told him to

come pick him up because Smith had threatened him.  (2T at 208; 218; 244-45; 332; 333).  While talking with his son, appellant was angry and yelling.  (2T. at 333; 348; 350).

When Christian got off of the phone, he told Smith, "My dad is coming to take care of you."  (2T. at 177-178).  Smith and Matthew Bacorn left the residence for approximately 45 minutes.  When they returned, they remained outside.  (2T. at 179; 196; 199; 208; 219).

Christian had remained inside the home watching television.  (2T at 333).  Since the argument was over and he wanted to stay, Christian tried to call appellant and tell him not to come.  Unfortunately, Christian was unable to reach appellant.  (2T. at 246; 334; 351; 357).

Approximately 11:30 p.m., while Smith and the others were sitting outside appellant drove up with his headlights off.  (2T. at 182; 210-11).  He got out of his Jeep, walked over to Smith and the others and asked for his sons.  (2T. at 182; 183; 197; 212; 221; 333; 352).

When Christian came outside, appellant asked him which person had threatened him.  The witnesses testified to different accounts of what then occurred.  All witnesses agreed that Appellant had a gun.  Christian testified that Appellant and Adam just started wrestling and fell to the ground.  (2T. at 336-37).  Adam was on top hitting Appellant when the gun went off.  (2T. at 337-38).  Zach Bacorn testified that Appellant pulled his gun and walked towards Adam.  Adam then took Appellant to the ground and they were rolling around.  Zach testified that Appellant was on top when the gun went off.  (2T. at 213-215).  Matt Bacorn testified that Appellant pulled out his gun and hit Adam in the head.  Adam pushed Appellant against a truck and there was a scuffle and the gun went off.  (2T. at 183-85).

Immediately after he shot Smith, appellant ordered his sons to get in the car and sped away.  After dropping the boys at their aunt's home, appellant went to his own residence.  (2T at 340).

When police arrived on the scene, they found Smith lying in the yard unconscious and learned that appellant was the shooter.  (2T. at 156-58).

Smith was taken to the hospital, but passed away as a result of the gunshot wound.

Sometime later police went to appellant's home to arrest him.  Police described his demeanor as calm and relaxed and noted that he had no visible signs of any injury.  After searching his home and his Jeep, police were unable to locate a gun.  (2T. at 162-66; 230-35; 241).

Chief Deputy Coroner PSS Murthy, Dennis Florea of the Stark County Crime Lab, and Detective Lancaster of the Canton Police Department each testified that Adam Smith's gunshot wound was a contact or near contact wound.  (2T. at 236; 266-67; 305).  This means that the muzzle of the gun was either against Smith's clothing or within three (3) to four (4), inches.  (2T. at 266-67).  The Coroner also testified that Adam Smith had four (4) small cuts or bruises and that these could be consistent with a struggle.  (2T. at 300-301; 319).

## II.    PROCEDURAL BACKGROUND

### A.    State Trial Court

On November 1, 2004, the Stark County Grand Jury returned an indictment against Petitioner charging him with Aggravated Murder in violation of Ohio Revised Code (O.R.C.) § 2903.01(A) with a Firearm Specification.  ECF Dkt. #9-3.

On February 14, 2005, Petitioner proceeded to a jury trial.  ECF Dkt. #9-7.  At the conclusion of the trial, the court instructed the jury on Aggravated Murder with a Firearm Specification, and the lesser included offenses of Murder and Negligent Homicide.  ECF Dkt. #9-11 at 433-444.  When the court asked counsel whether they were satisfied with the jury instructions as read, or whether they wished to alter the instructions or add any others, counsel for both parties responded in the negative.  *Id*. at 444-445, 447.  On February 16, 2005, the jury found Petitioner not guilty of Aggravated Murder, but guilty of Murder with a Firearm Specification.  *Id*. at 471-473; ECF Dkt. #9-5.

On February 24, 2005, the trial court issued its sentencing entry finding Petitioner guilty of Murder with a Firearm Specification and sentencing him to fifteen years to life imprisonment, with a mandatory consecutive term of three years for the Firearm Specification, for an aggregate of 18 years to life imprisonment.  ECF Dkt. #9-6 at 2-3.

**B.**      **Ohio Court of Appeals**

On March 16, 2005, Petitioner, through different counsel, filed a notice of appeal from his conviction.  ECF Dkt. #9-12.  Petitioner raised the following three assignments of error:

ASSIGNMENT OF ERROR I

APPELLANT'S CONVICTION FOR MURDER WITH A FIREARM SPECIFICATION WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.  (TR. AT 154-391).

ASSIGNMENT OF ERROR II

IT WAS PLAIN ERROR FOR THE TRIAL COURT TO FAIL TO INSTRUCT THE JURY ON THE DEFENSE OF ACCIDENT.  (TR. AT 424-460).

ASSIGNMENT OF ERROR III:

APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL DUE TO TRIAL COUNSEL'S FAILURE TO REQUEST IN WRITING AND/OR FAILING TO OBJECT WHEN THE TRIAL COURT FAILED TO INSTRUCT ON THE DEFENSE OF ACCIDENT.  (TR. AT 459-461).

-3-

ECF Dkt. #9-13.  On January 23, 2006, the Ohio Court of Appeals for the Fifth Appellate

District affirmed Petitioner's conviction.  ECF Dkt. #9-15.

### C.      Supreme Court of Ohio

On March 9, 2006, Petitioner, through new counsel filed a notice of appeal from the Fifth

District Court of Appeals' judgment affirming his conviction.  ECF Dkt. #9-22.  In his

memorandum in support of jurisdiction, Petitioner asserted two propositions of law:

> **Proposition of Law No. I**:    A trial court commits plain error when it fails to properly instruct the jury on relevant defenses.
>
> **Proposition of Law No. II**:   Trial counsel is ineffective when counsel fails to request that jury instructions be given on the defense of accident when the facts support such an instruction.

ECF Dkt. #9-23.  On June 7, 2006, the Supreme Court of Ohio denied leave to appeal and

dismissed the appeal as not involving any substantial constitutional question.  ECF Dkt. #9-26.

### D.      Ohio Appellate Rule 26(B) motion

On April 27, 2006, while his appeal to the Ohio Supreme Court was pending, Petitioner

pro se filed a motion to reopen his direct appeal pursuant to Rule 26(B) of the Ohio Rules of

Criminal Procedure.  ECF Dkt. #9-16.  Petitioner asserted that his appellate counsel failed to

protect his Sixth Amendment right to the effective assistance of counsel by not raising the

ineffectiveness of his trial counsel, who failed to request a jury instruction on accident and failed

to raise issues relating to hearsay.  *Id.*  Petitioner also contended that appellate counsel acted

ineffectively in failing to raise the issue of prosecutorial misconduct.  *Id.*

On July 13, 2006, the Fifth District Court of Appeals granted Petitioner's Rule 26(B)

motion and ordered the State of Ohio to respond to the motion.  ECF Dkt. #9-19.  The State of

Ohio filed its response and on August 22, 2006, the appellate court denied Petitioner's motion to

reopen.  ECF Dkt. #9-20, #9-21.

### E.      Federal Habeas Corpus Petition

On August 31, 2007, Petitioner, through new counsel, filed the instant petition seeking

relief from his state court conviction.  ECF Dkt. #1.  Petitioner presents the following ground for

relief:

I. A defendant is deprived of his Sixth Amendment right to effective assistance of counsel when counsel fails to request that jury instructions be given on the defense of accident when the facts support such an instruction.

*Id.* at 10.  In his supporting facts, Petitioner notes that counsel was ineffective by not requesting in writing instructions on the defense of accident and by not objecting to the trial court's omission of this instruction.  *Id.*

On December 3, 2007, Respondent filed a return of writ.  On February 11, 2008, Petitioner, through counsel, filed a traverse.  ECF Dkt. #12.

## III. PROCEDURAL BARRIERS TO REVIEW

A petitioner must overcome several procedural barriers before a court will review the merits of a petition for a writ of federal habeas corpus.  As Justice O'Connor noted in *Daniels v. United States*, "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim."  532 U.S. 374, 381 (2001); *see also United States v. Olano*, 507 U.S. 725, 731 (1993).

The Supreme Court has held that it would be in the interests of the parties and the courts for the merits of a petition to be addressed forthwith if it is clear that the applicant does not even raise a colorable federal claim. *Granberry v. Greer*, 481 U.S. 129, 135 (1987); *Prather v. Rees*, 822 F.2d 1418, 1421-22 (6th Cir. 1987) (lack of exhaustion was properly excused where petition was plainly meritless, the state had not addressed exhaustion, and disposition of the case would not offend federal-state comity).

In the present case, Respondent does not raise an issue relating to the statute of limitations[1] or procedural default and he agrees that Petitioner has exhausted the two issues in his

---

[1] In the context of a 28 U.S.C. § 2254 petition, the United States Supreme Court has held that a statute of limitations defense is not jurisdictional; hence, courts are under no obligation to raise the time bar *sua sponte*.  *See Day v. McDonough*, 547 U.S. 198, 205 (2006).  "[D]istrict courts are permitted, but not obliged, to consider, *sua sponte*, the timeliness of a state prisoner's habeas petition."  *See id*. at 209 (emphasis added).  "Of course, before acting on its own initiative, a court must accord the parties fair notice and an opportunity to present their positions."  *Id*. at 210.  Further, the court must assure itself that the petitioner is not significantly prejudiced by the delayed focus on the limitation issue, and "determine whether the interests of justice would be better served" by addressing

petition regarding the ineffectiveness of trial counsel in failing to request a jury instruction on accident and failing to object to the trial court's omission of such an instruction.  ECF Dkt. #9 at 7.  Accordingly, no procedural issues bar review of Petitioner's ground for relief.

**IV**.    **STANDARD OF REVIEW**

        Since Petitioner's claims overcome the procedural barriers of time limitation, exhaustion and procedural default, the AEDPA governs this Court's review of the instant case because Petitioner filed his petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 on August 31, 2007, well after the act's effective date of April 26, 1996.  *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied*, 522 U.S. 1112 (1998).  Under Section 2254, a state prisoner is entitled to relief if he is held in custody in violation of the United States Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(d).

        The AEDPA sets forth the standard of review for the merits of a petition for the writ of habeas corpus.  The AEDPA provides:

>    (d)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
>        (1)    resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>        (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added).  In *Williams v. Taylor*, the Supreme Court clarified the language of 28 U.S.C. § 2254(d) and stated:

>        Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that

_____

the merits or by dismissing the petition as time barred.  *Id.*

principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  Furthermore, the Supreme Court declared that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* Elaborating on the term "objectively unreasonable," the Court stated that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.*; *see also Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001).

The Sixth Circuit Court of Appeals offers the following guidelines for applying the AEDPA limitations:

A.    Decisions of lower federal courts may not be considered.

B.    Only the holdings of the Supreme Court, rather than its dicta, may be considered.

C.    The state court decision may be overturned only if:

    1.    It '[applies] a rule that contradicts the governing law set forth in [Supreme Court of the United States] cases,' (the Supreme Court precedent must exist at the time of petitioner's direct appeal) or;

    2.    the state-court decision 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent;' or

    3.    'the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case;' or

    4.    the state court 'either unreasonably extends a legal principle from [a Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'

D.    Throughout this analysis the federal court may not merely apply its own views

-7-

of what the law should be. Rather, to be overturned, a state court's application of Supreme Court of the United States precedent must also be objectively unreasonable.  That is to say, that 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'  'An unreasonable application of federal law is different from an incorrect or erroneous application of federal law.'

E.  Findings of fact of the state courts are presumed to be correct. 'The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.'

*Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001) (internal citations omitted).

Finally, a reviewing federal court is bound by the presumption of correctness, under which the federal court is obligated to "accept a state court's interpretation of the state's statutes and rules of practice." *Hutchinson v. Marshall*, 744 F.2d 44, 46 (6th Cir. 1984), *cert. denied*, 469 U.S. 1221 (1985); *see also Duffel v. Duttion*, 785 F.2d 131, 133 (6th Cir. 1986).  The presumption of correctness is set forth in 28 U.S.C. § 2254(e), which provides:

(e)(1)In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

28 U.S.C. § 2254(e).  The presumption of correctness applies to basic primary facts, and not to mixed questions of law and fact.  *Levine v. Torvik*, 986 F.2d 1506, 1514 (6th Cir. 1993), *cert. denied,* 509 U.S. 907 (1993).  The presumption also applies to "implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility."

*McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996), *cert. denied*, 520 U.S. 1257 (1997). Furthermore, a reviewing federal court is not free to ignore the pronouncement of a state appellate court on matters of law.  *See Central States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 676, n.4 (6th Cir. 2000).  Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

-8-

**V.    ANALYSIS**

For the following reasons, the undersigned recommends that the Court DISMISS Petitioner's sole ground for relief.

In *Strickland v. Washington*, the United States Supreme Court held that a defendant must establish the ineffective assistance of trial counsel by showing deficient performance by counsel and that the deficiency prejudiced his defense.  466 U.S. 668, 687 (1984).  In order to establish deficient performance, a defendant must demonstrate that counsel's representation "fell below an objective standard of reasonableness."  *Id*. at 688.  In order to establish prejudice, a defendant must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  *Id.* at 687.  It is insufficient for a defendant to show merely that the errors had some conceivable effect on the outcome of the proceeding as every action or inaction of counsel could have such an impact.  *Id.* at 693.  He must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id*. at 694-695.  While a petitioner bears the burden of establishing both deficient performance and prejudice, the court need not conduct an analysis under both prongs and may dispose of a claim based on a failure to carry either burden.  *Id*. at 697; *Baze v. Parker*, 371 F.3d 310, 321 (6th Cir. 2004).

Petitioner asserts that his counsel was ineffective by failing to request jury instructions on the defense of accident and by not objecting when the court failed to issue such an instruction. The appellate court addressed these claims, and using the *Strickland* standard, found that Petitioner could not meet the prejudice prong because an instruction on accident would have been inconsistent with defense counsel's chosen strategy that the shooting was a negligent homicide. ECF Dkt. #9-15 at 13-15.  The court cited numerous Ohio cases supporting such a finding, including *State v. Gay*, No. 88-P-2043, 1990 WL 170682 (Ohio Ct. App. 11th Dist. Nov. 2, 1990), unpublished, citing *State v. Hill*, 31 Ohio App.3d 65, 508 N.E.2d 1038 (1987); *State v. Wiley*, No. 03-AP-340, 2004 WL 396767 (Ohio Ct. App. 10th Dist. Mar. 4, 2004), unpublished; *State v.*

*Georgekopulos*, No. 18797, 1998 WL 831478 (Ohio Ct. App. 9th Dist. Nov. 25, 1998),

unpublished; and *State v. Samuels*, No. 52527, 1987 WL 17614 (Ohio Ct. App. 8th Dist. Sept. 24,

1987), unpublished.  *Id.* at 12.

      Upon review of the cases cited by the Ohio appellate court in this case, the undersigned

recommends that the Court find that its application of *Strickland* in this case was not objectively

unreasonable because the Court was not required to give an accident instruction.  Each of the

cited cases highlights the inconsistencies between a negligent homicide instruction and an

accident instruction and find that both are not required.  In *Gay*, the Eleventh District Court of

Appeals of Ohio, cited *Hill* and held that "no instruction on negligent homicide is required when

the theory of the defense is predicated on an accident."  1990 WL 170682 at *4.  In *Hill,* the First

District Court of Appeals of Ohio held that a defendant was not entitled to a jury instruction on

negligent homicide in part because he had argued from the onset that his shooting of the victim

was accidental, and did not raise negligent homicide until it was time to ask for jury instructions.

31 Ohio App.3d at 67.  The Tenth District Court of Appeals of Ohio held in *Wiley* that a jury

instruction on accident was inconsistent with the purported defense of self-defense because an

accident defense involves the ' "denial of a culpable act and is tantamount to a defendant not

committing an unlawful act' while a defendant asserting self-defense 'concedes he had the

purpose to commit the act, but asserts he was justified in the actions.' "  2004 WL 396767 at 6,

quoting *State v. Barnd*, 85 Ohio App.3d 254, 260, 619 N.E.2d 518 (1993).  In *Georgekopulo*s, the

Ninth District Court of Appeals of Ohio held that the defendant was not entitled to a jury

instruction on negligent homicide because the jury could only have found one of two options:

either that the defendant intentionally shot the victim, or he accidentally shot the victim during a

struggle with a gun.  1998 WL 831478 at *6.  And in *Samuels*, the Eighth District Court of

Appeals of Ohio held that the trial court properly refused to instruct the jury on negligent

homicide because the defendant's defense of accident was "totally inconsistent with a request for

a jury instruction with regard to involuntary manslaughter or negligent homicide in that each of

these offenses possesses the element of intent and/or criminal culpability. The appellant vis-a-vis

the defense of accident argues that the death of the victim did not involve the element of intent or criminal culpability." 1987 WL 17614 at *2.

Since Ohio courts have determined that an instruction on accident is inconsistent with an instruction on negligent homicide, the undersigned cannot say that the Ohio appellate court acted unreasonably in this case by finding that counsel was not ineffective in failing to request an accident instruction or in failing to object to the trial court's omission of an accident instruction when the theory of the case was negligent homicide. While Petitioner asserts in his traverse that accidental shooting cases sometimes raise inconsistent theories that should be presented to a jury for an objective rendering of a verdict, he cites no legal support holding that the presentation of the inconsistent instructions of accident and negligent homicide is required or that the denial of an accident instruction or failure to raise accident is reversible error when negligent homicide is a defense.

Since trial counsel acted reasonably in light of Ohio law by not pursuing an accident instruction because the trial court had instructed on negligent homicide, counsel's actions were not objectively unreasonable. Therefore, Petitioner's ineffective counsel claim should fail.

**VI.**     **CONCLUSION AND RECOMMENDATION**

For the foregoing reasons, the undersigned recommends that the Court find no merit to Petitioner's sole ground for relief because the appellate court's determination was not contrary to or an unreasonable application of *Strickland v. Washington*. The undersigned further recommends that the Court dismiss the instant petition with prejudice.


Date: September 11, 2008                      */s/George J. Limbert*
                                              GEORGE J. LIMBERT
                                              UNITED STATES MAGISTRATE JUDGE


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

-11-